## EXTRA COMPENSATION OF COUNTY OFFICERS.

[Circuit Court of Lucas County.]

STATE, EX REL, V. WILLIAM M. GODFREY.

Decided, February 16, 1903.

*Omitted Taxes—Compensation to County Auditors for Collecting—Where Assisted by Tax Inquisitors—Additional Clerk Hire on Account of Decennial Appraisement—Indexing Records of County Commissioners.*

1. The fact that an inquisitor is employed and paid for furnishing evidence to the county auditor, whereby property is placed on the tax duplicate which had been improperly omitted therefrom, does not deprive the auditor of the 4 per cent. compensation on the amount thus collected, provided for in Section 1071 relating to the fees of county auditors.
2. A county auditor is entitled to receive for indexing the records of the county commissioners the same fees as other officers receive for like services.
3. The provision in Section 1076 for an additional allowance to the county auditor for clerk hire, during the period when the decennial appraisement is being made of real property, is not limited to the year during which the reappraisement is actually made, but includes so much of the year following as may be necessary for the boards of equalization to complete their work, subject to the limitation of the statute requiring that this work be done before the fourth Monday in January of the second year following the reappraisement.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Heard on error.

This action was brought in the court below, *State* v. *Godfrey,* by the prosecutor in the name of the state of Ohio to recover certain sums from the defendant, William M. Godfrey, which it was claimed he had illegally drawn as auditor of Lucas county. There were five causes of action in the petition. An answer was filed to the petition, setting forth separate defenses to each cause of action. A demurrer was filed to each defense in the answer. The court of common pleas sustained the demurrer to the defenses to the first and fourth causes of action, and overruled the demurrer of the plaintiff to the defenses to the second,

third and fifth causes of action. Subsequently, the plaintiff dismissed the fourth cause of action of its petition, and the parties not pleading further, judgment was then entered in the court of common pleas upon the first, second, third and fifth causes of action, in accordance with the ruling on demurrer.

The court below held, in passing upon the demurrer to the defenses to these separate causes of action, that a cause of action was not stated in either the second, third or fifth causes of action in the petition, and, therefore, the demurrer to the answers to these causes of action was overruled, which in effect was the same as sustaining a demurrer, had one been filed, to these various causes of action in the petition, and judgment was entered in favor of the defendant upon them. A petition in error was filed in this court to reverse the judgment of the court of common pleas as to these three causes of action. These causes of action must be considered separately.

The second cause of action in the petition is to recover $2,-768.91 upon bills presented by the county auditor for placing upon the tax duplicate of the county certain omitted properties and levies for taxes. The cause of action as set forth in the petition is as follows:

"That in the year 1900 the said William M. Godfrey drew out of and withheld and still withholds from the county treasury the sum of $2,768.91 upon certain bills presented by him for services rendered in placing upon the tax duplicate of said county certain properties and levies for taxes furnished by the tax inquisitor, a person employed by authority of Lucas county to furnish said information, and who was duly paid therefor by said county of Lucas out of said county treasury; that said bills were illegally presented, and there was not and is no authority at law for the allowance of the same or the drawing out of the money for the payment thereof, or for the withholding of the same from the said county treasury, and the state of Ohio should recover thereon from said William M. Godfrey the sum of $2,-768.91."

This cause of action thus stated, and the answer to it, raises the question as to whether the auditor is entitled to four per cent. for placing omitted property upon the tax duplicate for taxation in counties where a tax inquisitor has been employed

to aid him and furnish him with evidence in the performance of his duty, the tax inquisitor being paid a percentage by the county. The court of common pleas held, in passing upon the demurrer, that this cause of action as stated in the petition, did not constitute a cause of action against the defendant. The section which allows the auditor fees for such services is Section 1071, Revised Statutes, which provides:

"In addition to the compensation specified in the two preceding sections the auditors of the several counties shall receive the compensation provided by law for their services as members of the boards for listing railroads, and under the school laws, and as county sealers, and in filing away statements of taxable property, and also four per centum of the amount of tax collected and paid into the county treasury [on property], omitted and placed by them on the tax duplicate."

This was passed June 3, 1871, and is found in 76 O. L., 117.

The statutes relating to the auditor's powers and duties in respect to placing property upon the tax duplicate and his powers in regard to summoning persons before him in his investigations, and procuring evidence, are Sections 2781, 2781a, 2782 and 2783, Revised Statutes. These sections make it his duty to act in the matter of omitted property or false returns, and give him power to summon witnesses before him to testify in any investigation made by him. The general act relating to the employment of tax inquisitors is Section 1343-1, Revised Statutes. The act under which the tax inquisitor was employed in this county is Section 1343a, Revised Statutes, and is as follows:

"That the county commissioners, county auditor and county treasurer, or a majority of said officers of any county in this state containing a city of the first class, and in any county containing a city of the first grade of the second class, shall have full and final power to employ any person or persons to ascertain and furnish to the county auditor the facts and evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate; no payment for such services to be made except in accordance with the terms of an agreement between the said officers, or a majority of them, and such person or persons; and such payment shall be made to such person or persons only out of money actually paid into the county treasury as taxes on such omitted property; and such

compensation shall be apportioned ratably by the county auditor among all the funds entitled to share in the distribution of such taxes, including the state itself, as well as the counties, townships, cities, villages, school districts, and other organizations entitled thereto.''

The claim is that in counties where an inquisitor is employed and paid for furnishing the evidence to the auditor, the auditor is not entitled to the four per cent. on omitted property which he places upon the tax duplicate, as was allowed and paid in this case.

There is no reference to the inquisitor · statutes in Section 1071, Revised Statutes, which provides for the payment of this percentage to the auditor, so that there is no express repeal of that provision or exception, where inquisitors are employed, but it is urged that the inquisitor performs all of the duties, when he is employed, which the auditor is required to perform in the premises, and therefore that the auditor should not have and is not entitled to any compensation; that the inquisitor takes the place of the auditor; that he procures the property to be placed upon the tax duplicate, and that the auditor has nothing to do except to perform the clerical act of entering the property upon the duplicate; and that therefore the inquisitor is the only one who is entitled to pay for the services in such cases. ·

The powers and duties of the auditor in this matter have been before the Supreme Court in one or two cases. It has been held that the auditor in this matter acts not entirely in a ministerial capacity; that his duties are of a *quasi* judicial character; that it is his duty to hear the evidence that may be offered before him; that the tax-payer himself may appear and give his own evidence and any other evidence that he may see fit to offer; that evidence may be offered upon the other side; and that in the end, after all the evidence is in, it is the duty of the auditor to act in a *quasi* judicial capacity and to determine the question whether the property should be subjected to taxation and placed upon the tax duplicate or not.

His compensation for these services, under Section 1071, Revised Statutes, does not depend upon the actual amount of labor which he performs or the volume of testimony which he considers

in performing this duty, but depends upon whether in the end he puts the property upon the tax duplicate, and whether finally taxes are collected upon that property and paid into the county treasury. In the case of *State* v. *Crites,* 48 Ohio St., 142, the Supreme Court held that if an auditor refused to act in a case of this kind where evidence was offered him tending to show that a tax-payer had omitted to return property, he might be compelled by a writ of mandamus to act. The court say in the third paragraph of the syllabus:

"It is the duty of a county auditor to act under Sections 2781 and 2782, Revised Statutes, whenever he is informed or has reason to believe that property has been improperly omitted from the tax duplicate of the county. If he declines to act upon the reasonable information, a petition in mandamus, by a relator who seeks to compel him to act, is sufficient, if it states facts showing that there was reason to believe that property had been improperly omitted from the tax duplicate."

The auditor in this case acted in obedience to the writ, and required Mr. Brice to appear before him. The relator in the case was the tax inquisitor of Allen county. The auditor heard the evidence furnished by the relator, and also took the testimony of Mr. Brice himself, and perhaps other testimony offered in his behalf, and then acted, as he claimed, according to his own judgment and discretion in placing property upon the tax duplicate. The inquisitor not being satisfied with the action of the auditor, filed a motion in the Supreme Court to attach him for contempt of court, and set forth his various grounds of complaint. This motion was denied, and the Supreme Court say in the third paragraph of the syllabus of the case, *State* v. *Crites, supra:*

"The remedy by mandamus, while appropriate to compel an officer to proceed in a judicial or *quasi* judicial matter confided by law to his jurisdiction, can not be invoked to correct his errors, or control his discretion."

And in the opinion, which was delivered by Judge Bradbury, on page 464, the court say:

"The first clause of the motion seems to assume that the peremptory writ commanded the respondent to conduct the inves-

tigation upon the evidence submitted to him by the relator. This is not correct. An examination of both the peremptory writ and the opinion delivered in the case, will not disclose any purpose in this court, when it awarded the writ, to prescribe to the respondent the evidence he should consider when making the investigation. It commanded him to proceed in the matter, but left his discretion untrammeled, not only as to the testimony he should consider, but also as to the conclusion he might reach.''

On page 415 of the opinion this is found:

''The respondent was acting in a *quasi* judicial capacity; he had assumed jurisdiction and entered upon the investigation; the law imposed upon him the duty of hearing and weighing evidence and rendering a decision upon it. This, necessarily, involved the exercise of judicial discretion.''

The court finally overruled the motion and discharged the rule at the cost of the relator, and held that while the court might compel the auditor to act in the premises, it could not tell him how to act, nor could his errors of judgment be reviewed upon a motion for attachment for contempt of court.

In *Probasco* v. *Raine*, 50 Ohio St., 378, the court held, as laid down in the syllabus:

''The fee of four per centum to county auditors, provided for by Section 1071, Revised Statutes, does not disqualify such auditors from performing the duties, and exercising the powers imposed on them by Sections 2781 and 2782, Revised Statutes.''

And in discussing the question Judge Burket in the opinion, on page 391, says:

''To have equality in taxation, all property must be brought upon the duplicate. Some officer must be authorized and empowered to cause all property to be listed for taxation. Such officer must be paid for his services, either by fees or salary. The Legislature has full power under the Constitution to say what officer shall perform such duties, and in what manner he shall be paid.

''It was enacted that such duties shall be performed by the auditor, and that he shall be paid as provided in Section 1071. In the opinion of the Legislature this is a proper means to attain, in part at least, equal taxation. It matters not whether the auditor acts judicially or ministerially in the discharge of his duties. The Legislature is free to employ such means, as in its

opinion, shall be most effective, whether they be judicial or ministerial, or both.''

Further along on this page the court say:

''A probate judge acts judicially in the appointment of guardians and administrators, and receives a fee for each appointment, and yet such fee does not disqualify him from acting in the premises.''

Attention is called to these decisions of the Supreme Court to show in what capacity the auditor acts, and that in the opinion of the court he is paid, and properly paid, for sitting in this *quasi*-judicial capacity, and determining whether property shall be placed upon the tax duplicate or not. As they say, whether it is a judicial act or a ministerial act, he is the tax officer of the county, and it is proper that some officer should perform this service, and proper that his compensation should be provided for by the Legislature. As already said, his compensation does not depend upon the amount of labor that he performs in any given case.

In the case of *Gager* v. *Prout*, 48 Ohio St., 89, the only evidence before the auditor was a certified copy of the inventory filed by the executor of the estate of a deceased person. The court held, in the fourth paragraph of the syllabus, that in the absence of anything to the contrary, that was sufficient to warrant the auditor in making the additions.

The tax inquisitor acts in an altogether different capacity. He exercises no judicial functions. He does not determine whether the property shall go upon the tax duplicate and be subject to taxation or not. He is employed to assist the auditor in procuring evidence in investigations of this kind; employed to furnish the auditor with evidence of omitted property, as stated in the statute, ''To make inquiry and furnish the county auditor the facts as to any omissions of property for taxation, and the evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate.'' He is an officer authorized by law and whose duty it is to aid in bringing omitted property upon the tax duplicate by furnishing evidence. As was held by the Supreme Court, the auditor is

not required to rest upon the evidence or facts furnished by the inquisitor; he may make further investigation. If he is not satisfied that the evidence of the inquisitor is sufficient, he may procure further evidence, if possible, to warrant him in placing property on the tax duplicate, or as in the Brice case, *State* v. *Crites, supra,* he may call the property owner himself before him, and interrogate him, and procure evidence from whatever source he desires; and when the evidence is all in, that furnished by the inquisitor as well as that coming from other sources, the auditor in all cases exercises hs own judgment, and he himself if that action is taken, in the end, place the property upon the tax duplicate.

In our judgment the court of common pleas was right in holding that no cause of action was stated in the second cause of action of the petition; that the inquisitor statute does not repeal or modify by implication Section 1071, Revised Statutes, which relates to the fees of the auditor; that the auditor is still entitled to his four per cent. notwithstanding the fact that an inquisitor was employed and aided him in these matters. Repeals by implication, it has been said by the Supreme Court of this state, are not favored. *State* v. *Dudley,* 1 Ohio St., 437, 441—an opinion by Judge Ranney:

"As repeals by implication are not favored, the repugnancy between the provisions of two statutes must be clear, and so contrary to each other that they can not be reconciled, in order to make the latter a repeal of the former. This rule is the result of a long course of decisions, and we know of no reason why it does not equally apply, when the repugnancy is alleged to exist, between a constitutional provision and a legislative enactment."

This question was before this court in a case in Williams county, an unreported case, and the opinion was not preserved. Had it been reported, it would not have been necessary to have discussed this question as fully as it has been considered here, if at all. The case is *Hamet* v. *Marshall.* The court held in that case, after full argument, where the facts were the same as they are here, that the auditor was entitled to his four per cent. We therefore find no error in the judgment of the court

of common pleas in its action in regard to this cause of action.

The third cause of action was also held by the court of common pleas not to constitute a cause of action against the defendant. It is as follows:

"That in the year 1900 the said William M. Godfrey drew out of and withheld from the county treasury the sum of $200 on account of a bill presented for indexing the journal and minutes of the board of county commissioners for the preceding year; that the said money was illegally drawn out of and withheld and is now withheld from the said county treasury without any warrant of law, and the said state of Ohio should recover from said William M. Godfrey, to be returned into said treasury of Lucas county thereon, the sum of $200."

An answer was filed to this cause of action and a demurrer filed to that answer. The court, however, held as to this cause of action, as in the former, that the demurrer to the answer searched the record, and that this did not constitute a cause of action against the defendant. The cause of action with the answer filed to it raises the question whether the auditor is entitled to compenation for indexing the journal and minutes of the commissioners. His claim is based upon Section 850, Revised Statutes, which provides:

"The clerk shall keep a full and complete record of the proceedings of the board, and a general index thereof, in a suitable book provided for that purpose. * * * And in counties where no index has been made of such record, the commissioners thereof are hereby authorized to cause an index to be made of such past records for such period of time subsequent to the first day of January, A. D. 1880, as the judgment of the county commissioners may determine; and the clerk shall receive for indexing, provided for in this section, such compensation as is provided for like services in other cases."

There is no provision in any "other case" or in any other statute for giving the auditor compensation for indexing, and it is therefore urged by counsel for plaintiff in error that there being no "other cases" for an auditor to perform like services, that this is equivalent to allowing no compensation, and therefore that the auditor should have no compensation for this service.

It is urged upon the other hand that this should be construed to relate to the cases of other county officers who keep similar indexes, and that the auditor should have a reasonable compensation, according to the allowances given to other officers for keeping such or similar indexes. There are many county officers that are paid under the statutes for keeping such indexes. The sheriff, under Section 1212, Revised Statutes, receives ten cents for indexing; the clerk of courts, under Section 1257, Revised Statutes, receives fifteen cents each for indexing, and under another section for a different kind of indexing, eight cents. Section 1183, Revised Statutes, provides that the county surveyor for a portion of his services shall receive ''the same fees as those of other officers for like services.'' Under Sections 1155 to 1157 the county recorder is allowed ten cents for indexing. So that it appears there are many cases where county officers do receive pay under the statutes for indexing. It seems to us to be clear from the language of this section that it was the intention of the Legislature that the auditor should receive compensation for these services. The language of Section 850, Revised Statutes, is that he ''shall receive for indexing, provided for in this section, such compensation as is provided for like services in other cases.''

There is no claim in argument, but it is conceded, that the allowance made in this case was a reasonable one, if any can be made, and not in excess of the amount allowed to other officers for like services. The amount allowed, it is said, was the same as that given the recorder by statute. If the Legislature had intended that the auditor should receive no compensation for these services it would have been a very easy matter to have said so, or to have said nothing and let it be covered by his general compensation, because it is not exactly certain under this statute what he is to receive; but if the provisions of the statute may be enforced and the intention of the Legislature carried out, that should be done, and the statute should be construed to sustain it in all of its parts, if it can be so done reasonably, by the courts. As appears from the statute relating to county surveyors, there is a provision there somewhat similar to this, that he shall receive ''the same fees as other officers for like services.'' It is

not the best way to express a thing of this kind in a statute. It would have been better for the Legislature to have stated exactly what the auditor was to receive; but for some reason the Legislature did not express it in that way, but left it as it is written. We think that this provision of the statute can not be disregarded or set aside by the courts, and that the auditor is entitled to his compensation as provided for in this section; and no complaint being made that the allowance made to him in this case was unreasonable or excessive as compared to that given to other officers, we find no error in the action of the court of common pleas in holding that this cause of action in the petition did not state a cause of action against the defendant, and therefore overruling the demurrer to the answer.

The fifth cause of action seeks to recover from the defendant $568.44 drawn from the county treasury in the first four months of 1901, being $142.11 monthly for clerk hire growing out of work performed in connection with the duties of said office on account of the decennial appraisement. The auditor claims the right to draw this money under Section 1076, Revised Statutes, which reads as follows:

"The county commissioners of the several counties have authority, and are required, to make an additional allowance to the county auditor for clerk hire, not exceeding twenty-five per cent. of the annual allowance made in the preceding sections in the years when the real property is required by law to be reappraised."

The decennial appraisement involved here commenced in the year 1900, and the appraisers were elected and made appraisment in the year 1900. It is claimed by the plaintiff that under this section of the statutes the auditor is not permitted to draw clerk hire except for the year 1900; that by the language of the statute this is limited to that year. He drew also for the first four months of the following year (1901) at the rate of $142.11 a month, in all $568.44. No question is made in the petition as to the amount he drew, but the claim is made that he was not entitled to draw anything. It appears from the answer that was filed to this cause of action and the contrary is not alleged in the petition, that the auditor drew twenty-five per cent. only

of the annual allowance provided for in Sections 1069 and 1070, Revised Statutes, for those four months. The contention is whether the words in the statute, "In the years when real property is required by law to be reappraised," apply only to the year 1900, when the decennial appraisers actually appraised the property, or whether they shall apply not only to that year, but to the following year, if the whole of that year is necessary for the action of the various boards of equalization and otherwise in completing .the appraisement, up to the fourth Monday in January of the year 1902, when the work was required to be finished.

The court of common pleas held on the demurrer to the answer that this cause of action as set forth in the petition did not state a cause of action against the defendant; that this language of the statute covered not only the year 1900, but so much of the following year as might be necessary for the action of the various boards.

The purpose of this section of the statute is evidently to allow the auditor compensation for the additional clerk hire that is imposed upon him by reason of the decennial appraisement of real estate. The statute itself does not provide that this shall be confined to the year when the district appraisers act in the appraisement of property, but it is only confined to the years when the real property is required by law to be reappraised. The actions of the various boards subsequent to the action of the appraisers in appraising the property is as necessary to a complete reappraisement and revaluation of the property as the action of the appraisers, and in our judgment the court of common pleas was right in its action in this behalf, and it did not err in holding that this cause of action, as set forth in the petition, did not state a cause of action against the defendant.

The decision of Judge Pugsley, who decided the case in the court of common pleas, was furnished to us, and is full and clear upon all of the questions involved in this case, and from it I will read an extract upon this last question. The various statutes are collected there, and the questions discussed clearly in *State* v. *Godfrey*. He says:

"The sole question, therefore, raised by the petition is, whether, under the law, the commissioners were authorized to allow to the auditor for clerk hire any sum expended in 1901. The language of Section 1076, Revised Statutes, is: 'clerk hire in the years when the real property is required by law to be reappraised. In what years does the law require the real property to be reappraised?' I find nothing in the statute which can be construed to require the reappraisement to be made in the year 1900, or to mean as matter of fact or law that the reappraisement is made in 1900. It is true that the work of the district assessors in valuing the real property was to be performed in 1900. It was to be performed after March 1, 1900, and before the first Monday of July, 1900, when they are required to make their returns to the county auditor. Sections 2789 and 2798, Revised Statutes. But the work of the district assessors does not constitute the decennial appraisement; it is only a part of it. After errors and omissions in the assessor's returns are corrected by the county auditor, they are then submitted to the decennial county board of equalization and the decennial city board of equalization, who proceed to equalize the valuation in the manner prescribed by law. The county board of equalization was required to convene on the third Monday of July, 1900, and to close its session on or before the first Monday in October, 1900. Section 2813, Revised Statutes, 94 O. L., 336. The city board of equalization was required to convene on the first Monday of August, 1900, and to close its session on or before the first Monday of October, 1900. Secton 2815, Revised Statutes, 94 O. L., 337. After the equalization by these boards is completed, the county auditor is required to transmit to the state auditor an abstract of the property, with the valuation as returned by the assessors and equalized by said boards. The decennial state board of equalization is then required to equalize the value of the property returned in the abstracts furnished by the several county auditors among the towns and counties in the state. And this board was required to meet on the first Tuesday in December, 1900, and to close its session on or before the first Monday of May, 1901. Section 2818, Revised Statutes, 94 O. L., 337. After the equalization by the state board is completed, it is then the duty of the state auditor to transmit to the county auditors a statement of the per centum as fixed by the state board, to be added to or deducted from the valuation, and it was the duty of the county auditor, on receiving such statement, to proceed forthwith to add to or deduct from each tract or lot of land in his county the required per centum.

It was then the duty of each of the decennial boards of equalization to meet as a board of revision; the decennial county board on the first Monday of May, 1901, and to close its session on or before the fourth Monday of September, 1901, and the decennial city board to meet on the first Monday in June, 1901, and to close its session on or before the fourth Monday of January, 1902; and the county auditor after that was required to correct the tax duplicate according to the deductions and additions ordered by the board of revision. Section 2814a, Revised Statutes, 94 O. L., 247. All these proceedings to which I have referred are an essential part of the decennial appraisement. So that the time in which the real property was required to be reappraised ran all through 1901, and did not expire until the fourth Monday of January, 1902. My conclusion, therefore, is that the expense of additional clerical help necessarily employed by defendant in 1901, is the proper subject of allowance under Section 1076, Revised Statutes. If that view is correct, the petition does not show that the amount drawn by the auditor in 1901 was illegally drawn. Having reached that conclusion, it is not necessary to consider the other questions discussed by counsel for the defendant.''

We agree with the learned judge who delivered the opinion in this conclusion. This amount of $142.11 per month drawn by the auditor for these four months was twenty-five per cent. of his allowance as provided for by Sections 1069 and 1070, Revised Statutes. Section 1076, Revised Statutes, provides, as read, that the granting to the county auditor of not to exceed twenty-five per cent. of the annual allowance made in the preceding sections is required to be done.

A question is made as to what is meant by the words ''preceding sections;'' whether those words relate only to Sections 1067 and 1070, Revised Statutes, which cover annual compensation, or whether they relate also to Sections 850, 1074, and 1075, Revised Statutes, which relate to other compensation to the county auditor. It is not necessary to decide that question in passing upon this case, as the compensation under consideration here was fixed on the basis of twenty-five per cent. of the allowance made to the auditor under Sections 1067 and 1070, Revised Statutes, only. However, without deciding the question at this time as to the right of the auditor to have any further compensation than what is claimed for these four

months, to-wit, twenty-five per cent. of his compensation as allowed under Sections 1067 and 1070, Revised Statutes, we will say that we think it is extremely doubtful whether he could be permitted to include also the compensation allowed him under Sections 850, 1074 and 1075, Revised Statutes, as a basis for the twenty-five per cent. The question is an important one, and we only go thus far in expressing our view upon it.

The opinion of the court below was full and clear upon all of the questions in the case, and we have reached the same conclusion. The judgment of the court of common pleas will therefore be affirmed.

*C. E. Sumner*, Prosecuting Attorney, and *W. H. A. Read*, for plaintiff in error.

*Brown & Geddes*, for defendant in error.

---

## CONTRACTS OF RELEASE FOR CLAIMS FOR INJURIES AGAINST RAILWAYS.